CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

| | | |
|---|---|---|
| RENE PETRONILO, on behalf of himself and others similarly situated, | : | Case No. 20 CV 5563 |
| | : | |
| Plaintiff, | : | FLSA COLLECTIVE ACTION and RULE 23 CLASS ACTION COMPLAINT |
| -against- | : | |
| SOUP N BURGER CORP. d/b/a SOUP N BURGER, and MUSTAFA TURAN, | : | **Jury Trial Demanded** |
| Defendants. | : | |

------------------------------------------------------------------------X

Plaintiff, RENE PETRONILO ("Plaintiff"), on behalf of himself and other similarly situated employees, by and through his undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants SOUP N BURGER CORP. d/b/a SOUP N BURGER ("SOUP N BURGER CORP."), and MUSTAFA TURAN (collectively, the "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), he is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) unpaid "spread of hours" premium for each day that Plaintiff's work shift exceeded ten (10) hours, (c) misappropriated tips, (d) service charges reported to be gratuities that were improperly withheld and/or misappropriated by Defendants, (e) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (f) prejudgment and post-judgment interest, and (g) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## THE PARTIES

5.      Plaintiff is a resident of Kings County, New York.

6.      Defendant, SOUP N BURGER CORP, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 1825 Emmons Avenue, Brooklyn, New York 11235.

7.      Defendant, SOUP N BURGER CORP., owns and operates a restaurant doing business as "Soup N Burger" located at 1825 Emmons Avenue, Brooklyn, New York 11235 (the "Restaurant").

8.      Defendant, MUSTAFA TURAN, is the President and Chief Executive Officer of each of SOUP N BURGER CORP., and is an owner, shareholder, director, supervisor, managing agent and/or proprietor of SOUP N BURGER CORP., who actively participates in the day-to-day operations of each of the Restaurant, and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with SOUP N BURGER CORP.

9.      At all time relevant hereto, Defendant MUSTAFA TURAN exercised control over the terms and conditions of Plaintiff's employment in that he has the power to and does in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, and (v) create and maintain employment records.

10.     At all times relevant hereto, Defendant SOUP N BURGER CORP. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

11.     At all times relevant hereto, the work performed by Plaintiff has been directly essential to the business operated by Defendants.

3

12.    Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

13.    Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

14.    Defendants knowingly and willfully misappropriated and/or withheld tips from Plaintiff in direct contravention of the New York Labor Law.

15.    Defendants knowingly and willfully misappropriated and/or withheld from Plaintiff "processing surcharges" purported to be gratuities in direct contravention of the New York Labor Law.

16.    Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

17.    At all times relevant hereto, Defendants' primary business was and is the sale of food and drinks for consumption.

18.    Defendant SOUP N BURGER CORP. constitutes a "restaurant" within the meaning of the New York Labor Law.

19.    Defendant, MUSTAFA TURAN, actively participates in the day-to-day operation of the Restaurant.  For instance, Mr. Turan personally hires and fires employees, supervises and directs the work of the employees, and instructs the employees how to perform their jobs.

20.    Defendant, MUSTAFA TURAN, creates and implements all crucial business policies, including policies concerning the number of hours the employees are

required to work, the amount of pay that the employees are entitled to receive, and the method and manner by which the employees are to be paid.

21.     In on or about October 2017, Defendants hired Plaintiff to work as a non-exempt delivery waiter/server at the Restaurant.

22.     Neither at the time of hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth is regular hourly rate of pay, any tip credits taken, and his corresponding overtime rate of pay.

23.     Plaintiff worked in that capacity for Defendants until on or about November 1, 2020.

24.     Plaintiff worked over forty (40) hours per week.

25.     From the beginning of Plaintiff's employment in or about October 2017 and continuing until approximately March 15, 2020, Plaintiff worked five (5) or six (6) days per week (off days varied), and his work schedule consisted of eight (8) hours per day from 9:00 a.m. until 5:00 p.m.

26.     Beginning on or about March 16, 2020 and continuing through in or about June 2020, Defendants' were limited to offering its customers delivery or take-out service due to the Covid-19 pandemic and the government-mandated shutdown.

27.     Beginning on or about March 16, 2020 and continuing through in or about June 2020, Defendants employed Plaintiff as a "packer," where his responsibilities were limited to packing food orders in preparation for delivery or customer pick-up.

28.     Between on or about March 16, 2020 and continuing through in or about June 2020, Plaintiff worked two (2) days per week (days varied), and his work shift consisted of either eight (8) hours from 11:00 a.m. until 7:00 p.m., or ten (10) hours from

9:00 a.m. until 7:00 p.m. Plaintiff's work shift would occasionally exceed ten (10) hours in a single day.

29. Beginning in or about July 2020 and continuing through the remainder of his employment on or about November 1, 2020, Plaintiff returned to working as a waiter/server at the Restaurant.

30. Beginning in or about July 2020 and continuing through the remainder of his employment on or about November 1, 2020, Plaintiff worked five (5) or six (6) days per week (off days varied), and his work schedule consisted of eight (8) hours per day from 9:00 a.m. until 5:00 p.m.

31. Throughout his employment, Plaintiff was not afforded a meal or rest break of longer than fifteen (15) minutes.

32. Throughout his employment, Plaintiff punched a time clock or other time-recording device at the start and end of each work shift.

33. From the beginning of Plaintiff's employment in or about October 2017 and continuing through in or about September 2018, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $15 per hour straight time for all hours worked, and worked between forty (40) and forty-eight (48) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

34. Beginning in or about October 2018 and continuing through on or about March 15, 2020, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $18 per hour straight time for all hours worked, and worked between forty (40) and forty-eight (48) hours per week. Work performed

above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

35.    Beginning on or about March 16, 2020 and continuing through in or about June 2020, Plaintiff was paid at the rate of $18 per hour, and worked between sixteen (16) and twenty (20) hours per week.  Thus, Plaintiff makes no claim for unpaid wages during this period.

36.    Beginning in or about July 2020 and continuing through the remainder of his employment on or about November 1, 2020, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $18 per hour straight time for all hours worked, and worked between forty (40) and forty-eight (48) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

37.    Plaintiff was paid by check up to forty (40) hours each week, with overtime hours paid in cash.

38.    Consequently, at no time during his employment was Plaintiff provided with a correct, proper, and accurate weekly wage statement upon receiving his wages.

39.    Defendants also improperly and unlawfully retained tips afforded to their tipped employees, including Plaintiff.  More specifically, from the beginning of his employment and continuing through in or about June 2020, Defendants failed to permit Plaintiff to retain any tips whatsoever – whether the customer left same in cash or by credit card.

40.    Thereafter, beginning in or about July 2020 and continuing through the remainder of his employment on or about November 1, 2020, Defendants required its

tipped employees, including Plaintiff to participate in an unlawful tip pool/share arrangement. More specifically, Defendants' tipped employees, including Plaintiff, were required to share their tips with employees who do not customarily and regularly receive tips as part of their employment, including hostesses and cashiers.

41.    In addition, Defendants regularly charged customers an automatic "processing surcharge" of 18% of the customer's total bill.

42.    Believing that the "surcharge" was intended as a tip for the wait staff, Defendants' customers often failed to provide a tip or gratuity for Defendants' servers, including Plaintiff.

43.    Defendants' servers, including Plaintiff, were never provided a portion of the "surcharge."

44.    Even when Defendants' customers provided a tip in addition to the "surcharge," the amount of the tip was far less than what the customer would otherwise be expected to give absent the "surcharge."

45.    Defendants failed to clearly notify its customers either orally or on the receipt that the "surcharge" was not a gratuity or tip for its wait staff.

46.    Defendants' failed to adequately notify its customers that the "surcharge" was not intended to be a gratuity, or that it would not be distributed in whole or in part to its wait staff.

47.    Defendants' customers reasonably understood the "surcharge" to be a gratuity, or a charge in lieu of a gratuity.

48.    The "surcharge" was a gratuity or a "charge purported to be a gratuity" within the meaning of the New York Labor Law.

49.    Defendants unlawfully demanded and retained the entire 18% "surcharge" it collected, and failed to distribute the service charge to its wait staff, including Plaintiff.

50.    Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

51.    Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff and other similarly situated employees "spread of hours" premium, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

52.    Defendants knowingly and willfully operate their business with a policy of misappropriating tip from Plaintiff and other similarly situated employees, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

53.    At all times relevant hereto, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient time and pay records.

## COLLECTIVE ACTION ALLEGATIONS

54.    Plaintiff brings this action individually and as class representative on behalf of himself and all other current and former non-exempt employees who have been or were employed by Defendants since November 16, 2017 through the close of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who were

compensated at rates less than the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

55.     The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

56.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

57.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

58.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

59.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.    Whether Defendants employed Plaintiff and Collective Action Members within the meaning of the FLSA;

b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    Whether Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

e.    Whether Defendants' violations of the FLSA are willful as that

terms is used within the context of the FLSA; and,

f.    Whether Defendants are liable for all damages claimed hereunder,

including but not limited to compensatory, liquidated and statutory

damages, interest, costs and disbursements and attorneys' fees.

60.    Plaintiff knows of no difficulty that will be encountered in the

management of this litigation that would preclude its maintenance as a collective action.

61.    Plaintiff and others similarly situated have been substantially damaged by

Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

62.    Plaintiff sues on his own behalf and on behalf of a class of persons under

Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

63.    Plaintiff brings his New York Labor Law claims on behalf of all persons

who were employed by Defendants at any time since November 16, 2014 through the end

of the opt-out period as ultimately set by the Court (the "Class Period") and who were

non-exempt employees within the meaning of the New York Labor Law and have not

been paid overtime compensation, "spread of hours" premium, and/or had their tips

misappropriated in violation of the New York Labor Law (the "Class").

64.    Upon information and belief, the persons in the Class identified herein are

so numerous that joinder of all members is impracticable. Although the identity and

precise number of such persons is unknown, and the facts upon which the calculation of

that number may be ascertained are presently within the sole control of Defendants, the

Class consists of all non-managerial current and former employees and, therefore, is so

numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

65.    Plaintiff's claims are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

66.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

67.    Plaintiff has committed himself to pursuing this action and has retained counsel experienced in employment law and class action litigation.

68.    Plaintiff will fairly and adequately protect the interests of the NY Class members.  Plaintiff understands that, as class representative, he assumes a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that he must consider the interests of the Class and Collective Action Members just as he would represent and consider his own interests, and that he may not favor his own interests over those of the Class or Collective Action Members.

69.    Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members.  Plaintiff understands that in order to provide adequate

representation, he must remain informed of litigation developments and he understands that he may be called upon to testify in depositions and at trial.

70.    Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

71.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.    Whether Defendants employed Plaintiff and Class members within the meaning of the New York Labor Law;

b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Class;

c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    Whether Defendants improperly and unlawfully retained portions of Plaintiff's and Class members' tips (including any surcharges);

e.    Whether Defendants failed to pay Plaintiff and members of the Class overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

f.    Whether Defendants failed to pay Plaintiff and members of the Class "spread of hours" premium when their workday exceeded ten (10) hours; and

g.      Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

72.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "71" of this Complaint as if fully set forth herein.

73.     At all times relevant hereto, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

74.     At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

75.     Upon information and belief, at least within each of the three (3) most recent years relevant hereto, SOUP N BURGER CORP. has had gross revenues in excess of $500,000.

76.     Plaintiff and the Collective Action Members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

77.     Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

78.     Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

79.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiff and the Collective Action Members.

80.     As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

81.     As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

82.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and the Collective Action Members suffered damages in an amount not presently

ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

83.     Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

84.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "83" of this Complaint as if fully set forth herein.

85.     At all times relevant hereto, Defendants employed Plaintiff and members of the Class within the meaning of New York Labor Law §§ 2 and 651.

86.     Plaintiff and Class members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of forty (40) per workweek.

87.     Defendants failed to pay Plaintiff and Class members overtime compensation in the lawful amount for all hours worked in excess of forty (40) per week in direct contravention of the New York Labor Law.

88.     Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and Class members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the New York Labor Law.

89.     Defendants knowingly and willfully violated the rights of Plaintiff and members of the Class by failing to pay "spread of hours" premium for each day their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations § 146-1.6.

90.     Defendants knowingly and willfully disregarded the provisions of the New York Labor Law as evidenced by: (i) their failure to compensate Plaintiff and Class members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, and (ii) their failure to pay "spread of hours" premium, and (iii) misappropriating tips (including any surcharges), when they knew or should have known such was due and that non-payment of overtime compensation, "spread of hours" premium, and tips (including any surcharges) would financially injure Plaintiff and Class members.

91.     The New York Labor Law prohibits an employer from making any deductions from wages, other than standard deductions for taxes. N.Y. Lab. Law § 193.

92.     The New York Labor Law also prohibits employers from receiving "kickbacks" from their employees. N.Y. Lab. Law § 198-b.

93.     Defendants regularly obtained kickbacks from their employees and made unlawful deductions from Plaintiff's and the Class members' wages and tips.

94.     Defendants unlawfully demanded and retained gratuities and "charges purported to be gratuities" from Plaintiff and Class members, in violation of the New York Labor Law. N.Y. Lab. Law § 196-d.

95.     Defendants failed to furnish Plaintiff and members of the Class with a statement with every payment of wages correctly listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

96.     Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all

employees, and other similar information in contravention of New York Labor Law §
661.

97.    Defendants failed to establish, maintain, and preserve for not less than six
(6) years payroll records showing the hours worked, gross wages, deductions, and net
wages for each employee, in contravention of the New York Labor Law § 194(4), and
New York State Department of Labor Regulations § 146-2.1.

98.    Neither at the time of her hiring, nor at any time thereafter, did Defendants
notify Plaintiff or Class member of their hourly rate of pay, corresponding overtime rate
of pay, and regularly designated payday, in contravention of New York Labor Law §
195(1).

99.    Due to the Defendants' New York Labor Law violations, Plaintiff and
Class members are entitled to recover from Defendants their unpaid overtime
compensation, unpaid "spread of hours" premium, unpaid tips (including any
surcharges), reasonable attorneys' fees, and costs and disbursements of this action,
pursuant to New York Labor Law § 663(1) *et al*. and § 198.

100.    Plaintiff and Class members are also entitled to liquidated and statutory
damages pursuant to New York Labor Law § 663(1), and the New York State Wage
Theft Prevention Act.

## **PRAYER FOR RELEIF**

**WHEREFORE,** Plaintiff, RENE PETRONILO, on behalf of himself and all
similarly situated Collective Action Members and Class members, respectfully requests
that this Court grant the following relief:

(a) An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(b) An award of unpaid "spread of hours" premium due under the New York Labor Law;

(c) An award of unpaid or misappropriated tips or charges purported to be gratuities under the New York Labor Law;

(d) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation under the FLSA pursuant to 29 U.S.C. § 216;

(e) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation and tips/gratuities pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f) An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g) An award of prejudgment and post-judgment interest;

(h) An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

(i) Such other and further relief as this Court determines to be just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

trial by jury on all issues.

Dated: New York, New York
       November 16, 2020

                    Respectfully submitted,

                    CILENTI & COOPER, PLLC
                    *Attorneys for Plaintiff*
                    10 Grand Central
                    155 East 44th Street – 6th Floor
                    New York, NY 10017
                    T. (212) 209-3933
                    F. (212) 209-7102


            By:
                    Giustino (Justin) Cilenti (GC2321)

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Rene Petronilo**, am an individual formerly employed by **Soup N Burger**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
         November 3, 2020

Rene Petronilo

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER
## LIABILITY FOR SERVICES RENDERED

TO: Mustafa Turan

PLEASE TAKE NOTICE that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Rene Petronilo and others similarly situated intend to charge you and hold you personally liable as one of the ten largest shareholders of Soup N Burger Corp., for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and has expressly authorized the undersigned, as his attorneys, to make this demand on his behalf.

Dated: New York, New York
        November 16, 2020

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017
T. (212) 209-3933
F. (212) 209-7102

By: _____
Justin Cilenti